### Shelburne Museum, Inc. v. The Town of Shelburne and Edna Cole, Treasurer

[278 A.2d 719]

No. 86-70

Present: Holden, C.J., Barney, Smith and Keyser, JJ., and Hill, Supr. J.

Opinion Filed April 7, 1971

Motion for Reargument Denied June 1, 1971

*Wick, Dinse & Allen,* Burlington, for Plaintiff.

*John T. Ewing,* Burlington, for Defendant.

**Holden, C.J.** The plaintiff is a non-profit corporation established in 1949 by Electra Havemayer Webb. It is engaged in the procurement, restoration, care, maintenance and display of artifacts, works of art, antiques and buildings of earlier periods of lasting and historical interest to the public at large. Under the sponsorship of the museum, seminars and courses of instruction, in collaboration with various educational institutions, have been conducted and learned publications produced which relate to this particular period in American culture. The publications have been widely disseminated to schools and libraries throughout the country.

The site of the museum is in the defendant town and consists of a large tract of land and an historical building complex. Prior to 1969 none of the real or personal estate of the museum had been assessed as taxable properties and no tax revenues were collected by the town. In that year the defendant appraised and assessed taxes on two homes. One is located at the entrance to the exhibit area and is occupied as a dwelling by the director of the museum, Sterling Emerson, and his family. The other home, located at the exit, serves as a dwelling for Duncan Munro, a full-time employee of the plaintiff,

engaged as a landscape artist. Neither of the occupants pays rent, as such, yet the free use of the homes is part of their compensation as employees of the museum. For convenience and security reasons, both residences are connected to internal telephone systems maintained by the museum. This arrangement establishes communication with a security staff of eight uniformed guards who provide twenty-four hour surveillance of the museum property.

The plaintiff petitioned the chancery court to declare these properties exempt from taxation and to order a refund of taxes paid by the plaintiff under protest. The chancellor entered a decree based on his findings of fact which granted the full relief requested by the plaintiff as to both properties. The defendant town appeals.

All are agreed that the plaintiff is engaged in a charitable enterprise and that the taxability of the two properties is controlled by 32 V.S.A. § 3802(4). This subsection provides:

> Real and personal estate granted, sequestered or used for public, pious or charitable uses; real property owned by churches or church societies or conferences and used as parsonages and personal property therein used by ministers engaged in full time work in the care of the churches of their fellowship within the state; real and personal estate set apart for library uses and used by the public and private circulating libraries, open to the public and not used for profit; lands leased by towns or town school districts for educational purposes; and lands owned or leased by colleges, academies or other public schools or leased by towns for the support of the gospel; and lands and buildings owned and used by towns for the support of the poor therein; but private buildings on such lands shall be set in the list to the owners thereof, and shall not be exempt. The exemption of lands owned or leased by colleges, academies or other public schools, shall not apply to lands or buildings rented for general commercial purposes, nor to farming or timber lands owned or leased thereby; but this provision shall not affect the exemption of so-called school or college lands, sequestered to such use prior to January 28, 1911.

■■ That both of the subject properties are owned by a corporation dedicated to charitable purposes does not establish their exemption. The ownership must be for the appropriate use and benefit of the institution in carrying out the charitable purpose for which it was established. *Willard* v. *Pike,* 59 Vt. 202, 218, 9 A. 907 (1886). To achieve exempt status, the property must confer a benefit upon that segment of the public which the institution was designed to serve. *The New York Institute for the Education of the Blind* v. *Town of Wolcott,* 128 Vt. 280, 262 A.2d 451, 454 (1970); *Gifford Memorial Hospital* v. *Town of Randolph,* 119 Vt. 66, 72, 118 A.2d 480 (1955). See also *The Experiment in International Living, Inc.* v. *Town of Brattleboro,* 127 Vt. 41, 48, 238 A.2d 782 (1968). The governing consideration is the direct and immediate benefit derived from the use of the property, rather than the remote or incidental benefit produced by its primary function. *Gifford Memorial Hospital* v. *Town of Randolph, supra,* 119 Vt. at 72; *Middlebury College* v. *Town of Hancock,* 115 Vt. 157, 164, 55 A.2d 194 (1947).

■ The chancellor's findings make it clear that, apart from their common use as residences and their connection with the internal telephone system, the two properties serve different functions in the administration of the museum. For security reasons it was one of the conditions of Mr. Emerson's employment, as director of the museum, that he reside on the museum property. He makes himself available at all times at his residence. His home is used on occasions for business and entertaining in the interests of the plaintiff. The findings further tell us that Mr. Emerson's duties include the preparation of the budget, the employment and suspension of the staff and, in general, to see that the policies of the institution are complied with and the purposes and aims of the museum promoted. These facts justify the conclusion that the plaintiff's governing board is using this property in a way that is essential to the operation of the museum and in furtherance of its charitable purpose. As such, the director's home is exempt from taxation under 32 V.S.A. § 3802(4). *Troy Conference Academy* v. *Town of Poultney,* 115 Vt. 480, 489, 66 A.2d 2 (1949).

■ The findings compose a different bearing for the property occupied by the landscaper. To be sure, his residence at the museum site is convenient to him and to the plaintiff. But there is nothing in the findings to indicate the duties of his employment require his abiding presence on the premises for either supervision or maintenance. The plain inference from the findings is that the advantage derived by the plaintiff from the use of the Munro house, as a dwelling for its employee, is collateral to the historical and educational purposes for which the institution was founded. In this context, the Munro dwelling house is a private building on the lands of the plaintiff and is beyond the scope of the exemption afforded by our statute. *Gifford Memorial Hospital* v. *Town of Randolph, supra,* 119 Vt. at 72.

In reaching this result, we are mindful of the authorities referred to in the plaintiff's brief from other jurisdictions. *St. Luke's Hospital* v. *Boyland,* 12 N.Y.2d 135, 187 N.E.2d 769, 772 (1962) ; *Blair Academy* v. *Blairstown,* 95 N.J. Super. 538, 232 A.2d 178, 180–81 (1967) ; *Board of Assessors* v. *Pioneer Valley Academy,* 355 Mass. 610, 246 N.E.2d 792 (1969), 795. But see *Williams College* v. *Assessors of Williamstown,* 167 Mass. 505, 46 N.E. 394, 395 (1897). The doctrine of these cases is founded on differing standards of exemption and facts which are at variance with those presented here.

*The declaratory decree as to the Emerson residence and the judgment for the plaintiff to recover the taxes paid in 1969 on this property is affirmed. The declaration that the Munro dwelling house is exempt and the judgment of the plaintiff to recover the taxes paid to the defendants in 1969 is reversed. Cause remanded for the entry of a new decree as directed without costs to either of the parties.*

### Memorandum re Motion for Reargument

**Per Curiam.** By way of a motion for reargument, the plaintiff advances again the proposition that the Courts cannot question the decision of the managing officers of a charitable institution as to use of property in their charge. With this we agree.

■ But the decision of the directors, as to how the property shall be used, cannot control the question of whether it shall be exempt from taxation. In order to be free from tax

liability, the property must be primarily devoted to a public use, rather than an incidental private need. As far as the plaintiff is concerned, it must directly serve the educational and historical purposes to which the museum is dedicated. The main opinion holds that the chancellor's findings establish that the Emerson property meets that test. The Munro property does not. The plaintiff's motion for rehearing offers nothing to change that result.

*Rehearing denied. Let full entry go down.*