NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 25

No. 2019-213

| | |
|---|---|
| Zlotoff Foundation, Inc. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Grand Isle Unit, |
| | Civil Division |
| | |
| Town of South Hero | October Term, 2019 |

Robert A. Mello, J.

Brian P. Monaghan and James F. Conway, III of Monaghan Safar Ducham PLLC, Burlington, for Plaintiff-Appellant/Cross-Appellee.

Wm. Andrew MacIlwaine and Kendall Hoechst of Dinse P.C., Burlington, for Defendant-Appellee/Cross-Appellant.

PRESENT: Reiber, C.J., Eaton, J., and Tomasi, Supr. J., Burgess J. (Ret.)[1] and Morris, Supr. J. (Ret.), Specially Assigned

¶ 1. **REIBER, C.J.** This appeal from summary judgment concerns the taxable status of a 9.9-acre parcel of land containing an 11,500-square-foot garage that is owned and used by Zlotoff Foundation, Inc., a nonprofit charitable organization, for the purpose of storing and maintaining a collection of classic automobiles that it displays at its nearby museum. The trial court ruled that the garage and the land were tax-exempt because they were used for a public purpose. However, it denied the Foundation's request for a refund of property taxes paid to the

---

[1] Justice Burgess was present for oral argument but has since recused himself.

Town of South Hero from 2016 to 2018 because the Foundation did not obtain a certificate of authority allowing it to transact business in Vermont until 2019. The Foundation and the Town both appealed. We affirm.

¶ 2.     The following facts were undisputed for purposes of summary judgment. Zlotoff Foundation, Inc., is a Michigan nonprofit corporation organized for charitable, educational, and conservation purposes. It operates a museum in South Hero, Vermont, that displays colonial tools and a classic automobile collection. The museum currently displays approximately 3000 tools from the American colonial era and forty classic cars. It is a member of the New England Museum Association and the Early American Industries Association. The museum does not charge admission. It is open to the public every Saturday from Memorial Day to Columbus Day, and all three of the federal holiday weekends during that period. It is also open to the public for special events and in response to requests from interested parties to visit on days when it is normally closed. The museum provides programming for local school groups and has been visited by more than 1000 people.

¶ 3.     The museum operates in a leased barn that is located on property owned by AIR Development, LLC.[2] The Foundation renovated the barn in 2008 to house the museum collection. For several years, the Foundation used the upper level of the barn to display the tool collection. In 2017, the Foundation began displaying the "Z Motorsports Collection" of vehicles at the museum.

¶ 4.     The Foundation owns a 9.9-acre parcel on Landon Road that abuts AIR Development's property. In 2016, the Foundation constructed a 11,500-square-foot garage on the Landon Road parcel. The Foundation uses the garage to store and repair its collection of classic automobiles, approximately seven of which are shown at the museum on a rotating basis. Prior to building the garage, the Foundation used part of the museum barn to repair and maintain its classic

---

[2] Paul Zlotoff is the listed agent and chairman of Zlotoff Foundation, Inc. He is also the sole member of AIR Development, LLC.

vehicles. The garage is operated on a not-for-profit basis. It is not open to the public, and it is not a museum. The Foundation does not use the garage or the land surrounding it for any purpose other than to support the museum.

¶ 5. In 2007, AIR Development, LLC, applied for site plan approval to improve the barn where the museum is located for use as "private storage for owner and antique tool collection housing." The South Hero Planning Commission issued a decision in October 2007 approving the project and proposed use. Neither the application nor the Planning Commission's decision referenced the possibility that the barn would be used as a public museum, and the permit was not for public use.

¶ 6. In February 2015, the Foundation applied for a zoning permit to construct the garage building on its Landon Road parcel. The Foundation's application for site-plan review stated the proposed use of the structure was "Private Garage (Structure, Independent)." The Foundation's representative testified at a hearing before the Planning Commission that the proposed independent structure would be used to store and display the landowner's private car collection. In April 2015, the Planning Commission granted site-plan approval for the garage. In May 2015, the Foundation submitted its Act 250 land-use application for the garage project. The application described the project as "[c]onstruction of a private garage for motor vehicle storage" and stated that the garage was "not intended for public access, and its purpose is to store automobiles and motorcycles." The Town issued a certificate of occupancy for the garage in January 2016 that identified the structure's type of use as "Garage—private car collection."

¶ 7. In February 2016, the Foundation requested a property-tax exemption from the Town for the Landon Road parcel, arguing that it qualified as real estate used for public, pious, or charitable purposes under 32 V.S.A. § 3802(4) because the garage supported the museum. In April 2016, the Town's board of listers and the Foundation informally discussed the exemption request. Based on the information provided by the Foundation, the listers issued a decision denying the

3

request. The listers reasoned that neither the barn nor the garage had the required permits to be open to the public for museum use and therefore the Landon Road parcel was not dedicated unconditionally to public use. The Foundation did not appeal the listers' decision.

¶ 8. In April 2016, the town zoning administrator sent a letter to AIR Development stating that the barn was being operated as a public museum in violation of its permitted use as "private storage for owner and antique tool collection housing." In June 2016, the zoning administrator sent a second letter advising AIR Development that the use of the barn as a museum was a zoning violation and that it would need to apply for a new site-plan approval and conditional-use change or a notice of violation would be issued. AIR Development subsequently applied to change the barn's permitted use to "Tool Museum." The town zoning board of adjustment and the planning commission approved the application in late 2016. The Town has not specifically approved the use of the ground floor of the barn for a car museum. The planning commission's decisions state that the ground floor "is empty and is used by the museum."

¶ 9. In June 2017, the Foundation again requested a tax exemption for the garage property. The board of listers denied the request. The Foundation appealed to the Board of Civil Authority (BCA), which denied the appeal. The BCA agreed with the listers that the property was not dedicated unconditionally to public use because the Foundation had not obtained a permit to operate a museum on the property. It also found that there was insufficient information to determine whether the property benefited an indefinite class of the public or was owned and operated as a nonprofit. It therefore upheld the listers' appraised value of $1,101,700 for tax year 2017.

¶ 10. The Foundation appealed the BCA's decision to the civil division of the superior court. In the spring of 2018, the parties each moved for summary judgment. The Foundation argued that the Landon Road parcel qualified for the public-use exemption because it was used solely to support the public use of the museum. It sought a refund of property taxes it paid to the

4

Town in 2016, 2017, and 2018. The Town argued that the Foundation failed to meet its burden of demonstrating that the parcel was dedicated unconditionally to public use because its zoning permits did not indicate it was being used to support the museum and it was not being used for core administrative functions of the museum. Further, it argued the Foundation had not demonstrated how the rest of the 9.9-acre parcel was being used.

¶ 11. In September 2018, the court issued a written decision denying the Town's motion for summary judgment and granting partial summary judgment to the Foundation. The court noted that the dispute between the parties arose in part from the Town's "understandable displeasure with the Foundation's decision to open a museum in a renovated barn without first securing proper permissions from the Town." However, it concluded that the Foundation's failure to secure complete and timely permission from the Town to conduct its museum-related activities did not control whether the Foundation had demonstrated public use as contemplated by 32 V.S.A. § 3802(4). The court determined that there was no dispute that the Foundation operated a museum that was dedicated unconditionally to public use. It concluded that the undisputed material facts demonstrated that the garage was directly connected to the Foundation's operation of the museum and was used in a way that was essential to the operation of the museum and in furtherance of its charitable purpose. It therefore concluded that the garage qualified for tax exemption under § 3802(4). However, it declined to determine whether the rest of the 9.9-acre parcel was exempt because the Foundation had not established how much of the parcel was dedicated to public use.

¶ 12. In December 2018, the Foundation filed a supplemental motion for summary judgment, arguing that the entire 9.9-acre Landon Road parcel was exempt from taxation because it supported the garage, was not used for any other purpose, and could not be used for any other purpose due to the size of the garage, parking area, and driveway; setback restrictions; wastewater treatment restrictions; well; wetlands; and site topography. The Town opposed the motion, arguing that the Foundation had failed to show that the land was unconditionally dedicated to public use

5

or that the entire parcel directly conferred a benefit on society. The Town further argued that the Foundation had not registered with the Secretary of State and therefore was not lawfully operating as a nonprofit in Vermont. The Foundation responded that its failure to register with the Secretary of State was an inadvertent oversight and that it had registered as of February 28, 2019, rendering the latter argument moot.

¶ 13.    The court issued a second summary-judgment decision holding that the Foundation had met its burden of demonstrating that the land, in addition to the garage, was exempt from taxation under § 3802(4). The court acknowledged that there were portions of the parcel that were not directly used to support the garage. It determined that because the parcel was undivided, and the primary and only use of the property was to support the garage, which in turn supported the museum, the entire parcel was exempt. However, it denied the Foundation's request for a refund of taxes paid in 2016, 2017, and 2018, reasoning that because the Foundation failed to register with the Vermont Secretary of State pursuant to Vermont's Nonprofit Corporation Act until February 28, 2019, it was not permitted to maintain a legal proceeding in Vermont until then. Accordingly, it concluded that the Foundation could not use this lawsuit to obtain any exemption from property taxes paid prior to February 2019.[3]

¶ 14.    Both parties appealed. The Foundation argues that the court erred in denying it a refund for taxes paid in 2016, 2017, and 2018 because the Town waived its argument that the Foundation lacked capacity to bring suit by failing to raise the issue earlier and because the Foundation registered during the pendency of the suit. The Town argues that the court erred in concluding that the garage or the land surrounding it were exempt under § 3802(4).

---

[3]    The Foundation initiated a petition for declaratory relief at the same time that it lodged its appeal from the BCA. The trial court's summary-judgment rulings disposed of both the appeal and the declaratory-judgment action.

¶ 15. We review an appeal from a decision granting summary judgment without deference and using the same standard as the trial court. Ice Ctr. of Washington W., Inc. v. Town of Waterbury, 2008 VT 37, ¶ 4, 183 Vt. 616, 950 A.2d 464 (mem.). That is, we will affirm "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). We conclude that the trial court did not err in determining that the garage and land were exempt and properly denied the Foundation's request for a refund, and therefore affirm its decisions below.

I.

¶ 16. We first consider whether the trial court correctly ruled that the Landon Road parcel qualifies for a tax exemption under 32 V.S.A. § 3802(4), which exempts from taxation "[r]eal and personal estate granted, sequestered or used for public, pious or charitable uses." To determine whether a property qualifies for the public-use exemption, we use the three-part test first set forth in American Museum of Fly Fishing, Inc. v. Town of Manchester, 151 Vt. 103, 557 A.2d 900 (1989). First, "the property must be dedicated unconditionally to public use." Id. at 110, 557 A.2d at 904. Second, "the primary use must directly benefit an indefinite class of persons who are part of the public, and must also confer a benefit on society as a result of the benefit conferred on the persons directly served." Id. Third, "the property must be owned and operated on a not-for-profit basis." Id. It is the taxpayer's burden to prove eligibility for the claimed exemption, and "any doubts as to its application will be interpreted against the exemption." Vt. Studio Ctr., Inc. v. Town of Johnson, 2010 VT 59, ¶ 7, 188 Vt. 223, 5 A.3d 904 (quotation omitted). On appeal, the Town argues that the Foundation did not provide sufficient evidence to meet the first two requirements of the Fly Fishing test. We address each argument in turn.

¶ 17. The Town's primary argument is that the Landon Road property is not dedicated unconditionally to public use because the Foundation did not obtain a permit to use the first floor of the barn for displaying classic cars or mention a connection to the museum in its permit

7

applications for the garage. The Town argues that § 3802(4) contains an implied limitation that the use for which an exemption is sought must be "legal," that is, that it must be expressly authorized by the municipality where the property is located.

¶ 18. Our goal when interpreting a statute is to carry out the intent of the Legislature. Concord Gen. Mut. Ins. Co. v. Sumner, 171 Vt. 572, 573, 762 A.2d 849, 851 (2000) (mem.). We begin by examining the plain language of the statute and presume the Legislature intended its ordinary meaning. Burlington Elec. Dep't v. Vt. Dep't of Taxes, 154 Vt. 332, 335, 576 A.2d 450, 452 (1990). If the plain meaning of the statute conflicts with the intent of the Legislature, we may look beyond the statutory language to give effect to legislative intent. Burr & Burton Seminary v. Town of Manchester, 172 Vt. 433, 436, 782 A.2d 1149, 1152 (2001). However, "[w]e will not read an implied condition into a statute unless it is necessary in order to make the statute effective." Brennan v. Town of Colchester, 169 Vt. 175, 177, 730 A.2d 601, 603 (1999) (quotation omitted).

¶ 19. The plain language of § 3802(4) does not contain the limitation suggested by the Town, and we decline to read it into the statute. The focus of § 3802(4) is on the actual use of the property, not whether that use is permitted by the town. Unlike in Burr & Burton Seminary, where well-settled case law and other provisions of the statute evidenced legislative intent that the public-use exemption be limited in a way that was not plainly stated, the Town has not identified any authority suggesting that a property owner's compliance with municipal zoning regulations is an implied precondition for the public-use tax exemption. See 172 Vt. at 438-39, 782 A.2d at 1153-54. The Town argues that such a condition is necessary to protect its power to enforce its zoning laws. However, the Town's power to ensure compliance with its zoning laws is amply protected by the zoning statutes, which provide various enforcement mechanisms.[4] See, e.g., 24 V.S.A. §§ 1974a, 3028 (allowing fines to be imposed for violations of zoning ordinances); 4451-4454

---

[4] Nothing in this decision affects the Town's ability to enforce its zoning regulations.

(authorizing fines and other remedies for violation of municipal bylaws and enforcement of permits). There is no indication in the plain language of § 3802(4) that the Legislature intended to engraft zoning laws into the public-use exemption, and such a condition is not necessary to effectuate the statute, the purpose of which is to exempt from taxation land used to serve a public purpose. Burr & Burton Seminary, 172 Vt. at 437, 782 A.2d at 1152. Whether a property owner has obtained permits for a particular use is a separate and unrelated question to whether the property is being used to serve the public.

¶ 20. The Town argues that requiring strict compliance with municipal laws to be eligible for exemption from tax under § 3802(4) is good public policy. While that may be so, "there are many ways that we could design a tax exemption eligibility policy consistent with the Town's view of legislative intent. . . . [T]he choices presented here are complex and far more suited to legislative resolution than to case-by-case judicial decision making." Inst. of Prof'l Practice, Inc. v. Town of Berlin, 174 Vt. 535, 537, 811 A.2d 1238, 1241 (2002) (mem.). The decision about whether to impose the limitation proposed by the Town on the public-use exemption is best left to the Legislature.

¶ 21. The Town also claims that we should defer to the BCA's interpretation of § 3802(4) because the BCA has authority to decide whether a property is exempt from tax and the Town is best suited to evaluate its own zoning requirements. It is true that the BCA is empowered to determine a property's tax-exempt status under 32 V.S.A. § 4404. See Vt. Coll. of Fine Arts v. City of Montpelier, 2017 VT 12, ¶ 9, 204 Vt. 215, 165 A.3d 1065 (holding that BCA has authority to rule on questions of tax-exempt status). And, "[e]ven in the context of de novo review, a court must still defer to an administrative agency's interpretation of a matter within its 'legislatively delegated expertise.' " Plum Creek Me. Timberlands, LLC v. Vt. Dep't of Forests, Parks & Recreation, 2016 VT 103, ¶ 23 n.7, 203 Vt. 197, 155 A.3d 694. However, we will not defer to an interpretation of a statute that is plainly incorrect. See Comm. to Save the Bishop's House, Inc. v.

9

Med. Ctr. Hosp. of Vt., Inc., 137 Vt. 142, 150-51, 400 A.2d 1015, 1019-20 (1979) ("It is a venerable principle that construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." (quotation omitted)). As discussed above, the BCA's interpretation of § 3802(4) is not supported by the language of the statute. We therefore are not required to defer to it.

¶ 22. The Town next argues that the Foundation has failed to demonstrate that the primary use of the garage is essential to the operation of the museum and in furtherance of its charitable purpose. We have long recognized that "[r]eal estate used for purposes directly connected with the running of" a charitable institution is exempt. Gifford Mem'l Hosp. v. Town of Randolph, 119 Vt. 66, 72, 118 A.2d 480, 484 (1955). In Shelburne Museum, Inc. v. Town of Shelburne, we held that a home on museum property that was occupied by the museum director and his family was exempt because the director was required to live there for security reasons, he made himself available at all times there, the home was used for business and entertaining in the interests of the museum, and the director's role was to see that the policies of the institution were complied with and the purposes and aims of the museum promoted. 129 Vt. 341, 344, 278 A.2d 719, 721 (1971). We concluded that the museum was using the director's home "in a way that is essential to the operation of the museum and in furtherance of its charitable purpose."[5] Id. Similarly, in Medical Center Hospital of Vermont v. City of Burlington, we held that several administrative offices and a parking garage were exempt under § 3802(4) because they were necessary to the operation of the hospital. 152 Vt. 611, 624, 566 A.2d 1352, 1359 (1989). In Institute of Professional Practice, Inc. v. Town of Berlin, we rejected a town's argument that real

---

[5] On the other hand, we rejected the museum's argument that a residence provided for its landscaper was tax-exempt because the evidence showed that the landscaper was not required to be present at the museum at all times, the provision of the residence was only a convenience to the museum, and the benefit to the museum from the residence was "collateral to the historical and educational purposes for which the institution was founded." Id. at 345, 278 A.2d at 721.

property owned by a charitable organization providing services to individuals with developmental and other disabilities in group homes, foster homes, and other assisted living programs in other states was not exempt because it was used for "back office functions." 174 Vt. at 538, 811 A.2d at 1242. We held that the parcel was used for purposes directly connected to the running of the nonprofit's services and therefore qualified for the public-use exemption. Id.

¶ 23. The Town argues that these cases create a requirement that the supporting property for which an exemption is sought be necessary for the primary institution to function, or, put another way, that the institution could not function without the supporting property. The Town argues that this test is not met because the Foundation plainly could operate the museum without the garage, having done so for years before the garage was constructed.

¶ 24. We disagree with the Town's characterization of our case law. The critical test in each of the above decisions was not whether the charitable institution could not run without the supporting property, but rather whether the institution was using the supporting property for purposes "directly connected to the running of" the institution. Id. (quotation omitted). The Foundation demonstrated that the garage satisfied this broader test. The undisputed facts showed that the museum could only display seven of its forty vehicles at a time and needed a place to store, repair, and maintain the other vehicles. Before the garage was built, the museum used the first floor of the barn to repair the vehicles, rendering the space unsuitable for public visitation. After repair, maintenance, and storage functions were transferred to the garage, the museum was able to make the first floor presentable for the public display of vehicles.[6] The garage therefore serves an

---

[6] The Town argues that the Foundation "alleged without explanation that the first floor of the barn space was not suitable for public visitation until after the construction of the garage." This is inaccurate. The Foundation provided an affidavit from its chairman explaining that the first floor was previously used for repair operations and was not suitable for public visitation, and has since been made presentable for display of vehicles because the Foundation moved the repair, maintenance, and storage operation to the garage. The Town did not properly demonstrate that this assertion was genuinely in dispute in accordance with the summary-judgment rule. See V.R.C.P. 56(c) (providing that party asserting fact is disputed must support assertion by filing

11

essential function that is directly connected to the running of the museum and furthers the museum's charitable purpose. The Foundation accordingly met its burden of demonstrating that the garage is exempt under § 3802(4) and the above precedent.

¶ 25. The Town further argues that the Foundation has failed to meet the second prong of the Fly Fishing test because it has not demonstrated that the garage sufficiently benefits the public to be exempt under § 3802(4). The Town claims that the Foundation did not present evidence that the cars displayed in the museum confer a significant enough benefit on society to justify exempting the garage.

¶ 26. The Town waived this argument by failing to timely raise it below in response to the Foundation's motion for summary judgment on the taxability of the garage. See Progressive Ins. Co. v. Brown ex rel. Brown, 2008 VT 103, ¶ 9, 184 Vt. 388, 966 A.2d 666 (explaining that in response to defendant's motion for summary judgment, plaintiff was required to raise any arguments that defeated motion or supported its own claim for summary judgment). The Town had the opportunity to argue that the garage did not benefit the public in response to the Foundation's first motion for summary judgment or in its own cross motion for summary judgment. However, the Town only challenged the first prong of the Fly Fishing test in those filings. The trial court noted as much in its decision granting partial summary judgment to the Foundation on the issue of whether the garage was exempt, and the Town did not object to the court's characterization of its arguments. Only after the Foundation filed a supplemental motion for summary judgment on the taxability of the land surrounding the garage did the Town argue— for the first time—that the garage itself did not confer a benefit on the public. The trial court acted within its discretion in declining to consider this new argument after having granted summary

statement of disputed facts with citations to record, or showing that materials cited do not establish absence of genuine dispute or that adverse party cannot present admissible evidence to support fact).

12

judgment to the Foundation on the taxability of the garage, because there was no reason that the Town could not have raised it earlier. See Campbell v. Stafford, 2011 VT 11, ¶ 17, 189 Vt. 567, 15 A.3d 126 (mem.) (holding trial court did not abuse discretion in denying motion to reconsider summary judgment that relied on new theory that could have been raised before summary judgment awarded to defendants). And, because it was not raised in a timely manner, the Town failed to preserve the issue for our review. See Vt. Agency of Nat. Res. v. Parkway Cleaners, 2019 VT 21, ¶ 45, __ Vt. __, 210 A.3d 445 (holding defendant failed to preserve statute-of-limitations defense by properly presenting it to court in opposition to State's motion for summary judgment or in own motion for summary judgment); Lanphere v. Beede, 141 Vt. 126, 129, 446 A.2d 340, 341 (1982) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal.").

¶ 27. Finally, the Town argues that the land surrounding the garage should be taxable even if the garage itself is exempt. Our previous decisions contain some support for the idea that a property may be divided for the purpose of taxing the portions that are not dedicated to public use, although we have never had occasion to conduct such an analysis. See, e.g., Vt. Coll. of Fine Arts, 2017 VT 12, ¶ 18; Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica, 2005 VT 16, ¶ 35, 178 Vt. 35, 869 A.2d 145; Med. Ctr. Hosp. of Vermont, Inc., 131 Vt. at 199, 303 A.2d at 470-71. In this case, the undisputed facts do not support such a division. As the trial court noted, the Landon Road property is an undivided parcel that the Town is attempting to tax as an undivided parcel. The undisputed facts showed that the primary and only use of the land is to support the garage, and that other uses of the property are not feasible.[7] Since the primary use of the land is to support the garage, which itself is necessary to the running of the museum, the land is also

---

[7] Although the Town disputed that these facts made the land exempt, it did not genuinely dispute the facts themselves.

13

exempt. See Inst. of Prof'l Practice, Inc., 174 Vt. at 538, 811 A.2d at 1242 ("[T]he crucial factor is the primary use to which the property is put.").

¶ 28. The Town argues that at least some of the land is not used for any purpose and therefore is not exempt. But the Town does not explain how, on the record before us, the exempt portion can be distinguished from the taxable portion. "Where a tax is assessed upon property, a part of which is exempt and a part is not, and there is no way to distinguish the exempt from the taxable, the whole is exempt." Spaulding v. City of Rutland, 110 Vt. 186, 190, 3 A.2d 556, 557-58 (1939); see also Town of Orange v. City of Barre, 95 Vt. 267, 272, 115 A. 238, 240 (1921) (holding same).

¶ 29. Contrary to the Town's argument, our decision in Governor Clinton Council, Inc. v. Koslowski, 137 Vt. 240, 403 A.2d 689 (1979), does not require a different conclusion. In Koslowski we held that a tract of forested land held as "forever wild" by a scouting organization was not exempt from taxation under 32 V.S.A. § 3802(2) because the evidence indicated that the land was primarily used not to further the goals of the organization but rather for no purpose at all. Id. at 248, 403 A.2d at 694. Whether the tract could be divided into taxable and nontaxable portions was not at issue in Koslowski; the case turned on the primary use of the entire undivided tract. Because the primary use of the tract was no use, it was taxable. Here, by contrast, it is undisputed that the primary use of the entire Landon Road parcel is to support the garage, which in turn supports the museum. The parcel therefore qualifies for the exemption under § 3802(4).[8]

---

[8] The Town argues the court incorrectly reasoned that if the parcel were 99.9 acres and only a small portion of it were being used for the garage, then it might make sense to require the parties to hire surveyors and engineers to determine how much of the parcel was devoted to supporting the building. The Town argues it was error for the court to base its decision on the size of the parcel. Even if the court's statement was error, it does not justify reversing the decision below. Because the Town did not genuinely dispute that the primary use of the entire parcel was to support the garage, a tax-exempt purpose, the court correctly ruled that the parcel was exempt. Bloomer v. Gibson, 2006 VT 104, ¶ 26 n.4, 180 Vt. 397, 912 A.2d 424 (explaining that "this Court may affirm a trial court's decision if the correct result is reached, despite the fact that the court based its decision on a different or improper rationale" (quotation omitted)).

14

¶ 30. Having concluded that the Landon Road parcel is exempt under § 3802(4), we turn to the Foundation's argument that the trial court erred by denying it a refund for property taxes paid to the Town in 2016, 2017, and 2018 because the Foundation was operating without a certificate of authority during that time. We conclude that the trial court correctly denied the refund.

¶ 31. The Vermont Nonprofit Corporation Act provides that "[a] foreign corporation may not transact business in this State until it obtains a certificate of authority from the Secretary of State." 11B V.S.A. § 15.01(a). Section 15.02(a) provides that "[a] foreign corporation transacting business in this State without a certificate of authority may not maintain a proceeding or raise a counterclaim, crossclaim, or affirmative defense in any court in this State until it obtains a certificate of authority." Id. § 15.02(a). The trial court held that because the Foundation, a foreign corporation, was operating without a certificate of authority from the Vermont Secretary of State until February 2019, it could not use this lawsuit to seek such a refund of taxes paid prior to then.

¶ 32. The Foundation argues that a claim that a corporation is precluded from maintaining suit because it lacks a certificate of authority is a capacity defense, and the Town waived any objection to the Foundation's capacity by failing to raise the issue earlier in the litigation. The Foundation further claims that it cured the problem by obtaining a certificate of authority in February 2019 and that its acquisition of capacity related back to the initiation of the action. We find both arguments to be without merit.

¶ 33. The Foundation first argues that the Town waived any objection to the Foundation's capacity to file suit by failing to assert the defense "by specific negative averment" in a responsive pleading at the outset of the litigation, as required by Rule 9(a) of the Vermont Rules of Civil Procedure. The Foundation raised this argument for the first time in its appellate brief. "To properly preserve an issue for appeal a party must present the issue with specificity and clarity in

a manner which gives the trial court a fair opportunity to rule on it." State v. Ben-Mont Corp., 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994). The Foundation did not present this issue to the trial court and we therefore decline to address it on appeal.[9]

¶ 34. The Foundation also claims that the Town conceded that it was operating legally in Vermont by failing to dispute the Foundation's statement in its summary judgment motion that the Foundation "operated in Vermont." We disagree that the Town's admission that the Foundation had been operating in Vermont for several years amounts to a concession that it had a certificate of authority to do so. The term "operate" does not imply such a condition. The Foundation also argues that the Town did not dispute the Foundation's incorrect assertion in a supplemental statement of facts that the Foundation was "registered to operate in the State of Vermont." The record reflects that the Town did in fact dispute that assertion when it responded to the Foundation's second motion for summary judgment. The Town therefore did not concede the issue below.

¶ 35. Alternatively, the Foundation argues that it acquired capacity by immediately obtaining a certificate of authority from the Secretary of State when the Town raised the issue, and that its acquisition of capacity relates back to the filing of the action for all purposes, including obtaining a tax refund. The Foundation argues that the Legislature's use of the words "maintain" and "until" in § 15.02(a) means that an unregistered corporation may initiate a suit but must cure the lack of registration to continue it if the opposing party properly objects. The Foundation argues

---

[9] We note, however, that while a defendant ordinarily must raise a capacity defense in a responsive pleading or risk waiver of the defense, courts have held that a trial court may ignore a failure to comply with Rule 9(a) where there is no prejudice and the parties have a full opportunity to brief the issue. C. Wright & A. Miller, 5A Fed. Prac. & Proc. Civ. § 1295 (4th ed.); see, e.g., In re Raffin, 284 F. App'x 405 (9th Cir. 2008) (noting that "a motion for summary judgment may be an appropriate vehicle for asserting lack of authority by specific denial pursuant to Rule 9"); Gardner by Gardner v. Parson, 874 F.2d 131, 139 n.12 (3d Cir. 1989) (holding defendant did not waive capacity defense by failing to initially raise it in responsive pleading where parties had full opportunity to brief issue and plaintiff was not prejudiced). Furthermore, a responsive pleading is not technically required in a Rule 74 appeal. V.R.C.P. 74(d).

that it obtained a certificate of authority in February 2019 and that its acquisition of capacity related back to the filing of the suit. The Foundation relies on our statement in Korda v. Chicago Insurance Company that "where, as here, a plaintiff acquires capacity to sue after the suit is filed, and before the action is dismissed for lack of capacity, the acquisition of capacity relates back to the filing of the action for all purposes, including compliance with the statute of limitations." 2006 VT 81, ¶ 16, 180 Vt. 173, 908 A.2d 1018.

¶ 36. Korda does not control the issue before us because we are not reviewing a dismissal of a lawsuit for lack of capacity, but rather considering whether the Foundation's right to a tax exemption existed before it obtained a certificate of authority to transact business in Vermont. Neither Korda nor the other cases relied upon by the Foundation involved a claim for a tax refund by a foreign corporation. They are therefore unhelpful to resolving the question at hand, which is whether an unregistered foreign corporation whose property is determined to be tax exempt is entitled to a refund of taxes paid or owed prior to obtaining a certificate of authority.

¶ 37. We conclude that it is not. "[Tax] exemptions are the exception to the rule and not favored. The burden is on the person claiming the benefit of the exemption, and the exemption statute must be strictly construed against that person." Brownington Ctr. Church of Brownington, Vt., Inc. v. Town of Irasburg, 2013 VT 99, ¶ 9, 195 Vt. 196, 87 A.3d 502. As discussed above, the Foundation is currently entitled to an exemption from property tax for the Landon Road parcel because it has demonstrated that it uses the property for the public purpose of supporting the museum. The tax exemption, in other words, is based on the business that the Foundation transacts. We agree with the trial court that because the Foundation was not authorized to transact business in Vermont until it obtained a certificate of authority in February 2019, 11B V.S.A. § 15.01(a), it was not eligible for the tax exemption prior to then and is not entitled to a refund of taxes it paid or owed previously. While the Foundation's registration may have cured the defect of lack of capacity for purposes of maintaining its lawsuit, it does not follow that the belated registration

retroactively entitled the Foundation to the tax exemption. We therefore affirm the trial court's decision to deny the Foundation a refund of taxes paid from 2016 to 2018.

Affirmed.

FOR THE COURT:

_____

Chief Justice