2008 VT 37

## THE ICE CENTER OF WASHINGTON WEST, INC. v. TOWN OF WATERBURY and State of Vermont

[950 A.2d 464]

No. 07-265

Teachout, J.

¶ 1. March 26, 2008. Plaintiff, the Ice Center of Washington West, Inc., appeals from a grant of summary judgment for defendants, the Town of Waterbury and the State of Vermont. We affirm.

¶ 2. The Ice Center is a Vermont nonprofit corporation that was formed to construct and operate an indoor ice rink in Waterbury, Vermont. The Ice Center is used primarily by school hockey players and skaters for practices and games. Twelve local schools use the Ice Center. After treating the Ice Center as tax exempt for several years, the Town of Waterbury, following instructions from the Vermont Department of Taxes, sent a notice of a change of appraisal to plaintiff in 2006 indicating its intent to remove the Ice Center's tax-exempt status. Subsequently, the Ice Center petitioned the

Washington Superior Court, seeking a declaration of its rights and obligations relating to the taxability of its land and premises and relief from its pending tax bill. 12 V.S.A. § 4711 (courts shall have power to declare rights, status, and other legal relations).

¶ 3. The State moved for summary judgment, arguing that the Ice Center is a "community recreational facility" and therefore is not exempt from property taxes under 32 V.S.A. § 3832(7), unless so voted by the municipality. The Ice Center cross-moved for summary judgment, arguing that its primary purpose is educational and that it is therefore tax exempt under 32 V.S.A. § 3802(4). The superior court granted defendant's motion and denied the Ice Center's. The court found that the Ice Center is primarily dedicated to recreational activity and thus, that § 3832(7) applied. The court concluded that the Ice Center could not be tax exempt under § 3802(4).

¶ 4. We review a grant of summary judgment de novo, applying the same standard as the trial court. *Burr & Burton Seminary v. Town of Manchester*, 172 Vt. 433, 435, 782 A.2d 1149, 1151 (2001). Summary judgment is proper where there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). A tax exemption is strictly construed against the taxpayer, "and any doubts as to its application will be interpreted against the exemption." *Am. Museum of Fly Fishing, Inc. v. Town of Manchester*, 151 Vt. 103, 108, 557 A.2d 900, 903 (1989) (quotations omitted).

¶ 5. The Ice Center argues that it is exempt from property tax under subsection (4) of § 3802, which applies generally to "[r]eal and personal estate granted, sequestered or used for public, pious or charitable uses." The subsection exempts certain uses such as churches, libraries, colleges, academies, or other public schools. Any exemption available under § 3802(4) is limited by § 3832(7), and the taxpayer has a double burden: first, to prove exemption under § 3802(4); and second, to show that the exemption is not limited by § 3832(7). *In re Aloha Found., Inc.*, 134 Vt. 239, 240, 360 A.2d 74, 75-76 (1976). If subsection (7) applies, "there can be no tax exemption without a vote of the town concerned." *Id.* at 240, 360 A.2d at 76.

¶ 6. The superior court decided this case under § 3832(7) and did not reach the Ice Center's claims regarding § 3802(4). Section 3832 provides:

> The exemption from taxation of real and personal estate granted, sequestered or used for public, pious or charitable uses shall not be construed as exempting:
>
> . . . .
>
> (7) Real and personal property of an organization when the property is used primarily for health or recreational purposes, unless the town or municipality in which the property is located so votes at any regular or special meeting duly warned therefor.

32 V.S.A. § 3832(7).

¶ 7. When construing a statute, our primary objective is to effectuate the intent of the Legislature. *In re S. Burlington-Shelburne Highway Project*, 174 Vt. 604, 605, 817 A.2d 49, 51 (2002) (mem.). Our first step is to look to the language of the statute itself; we presume the Legislature intended the plain, ordinary meaning of the language. *Burlington Elec. Dep't v. Vt. Dep't of Taxes*, 154 Vt. 332, 335, 576 A.2d 450, 452 (1990). When the plain language is clear and unambiguous, our inquiry is at an end, and we enforce the statute according to its terms. *State v. Eldredge*, 2006 VT 80, ¶ 7, 180 Vt. 278, 910 A.2d 816.

¶ 8. The Ice Center concedes that it "is a community recreational facility." The Ice Center's mission statement states that the facility offers "constructive recreational choices." On appeal, the Ice Center does not argue that the facility is not recreational. Instead, the Ice Center posits that because 75% of the use comes from schools and their students, the recreational nature of the facility is outweighed by an educational purpose sufficient to avoid § 3832(7)'s limitation. We agree with the superior court that the facility is primarily dedicated to recreation. Ice skating and extracurricular activities based on ice skating, such as hockey, are traditionally considered to be recreational in nature. The fact that the facility may be primarily used by schools and their students, while true in this case, is also true of most recreational facilities and is not per se indicative of an educational purpose. See *President & Fellows of Middlebury College v. Town of Hancock*, 147 Vt. 259, 261, 514 A.2d 1061, 1063 (1986) (holding that college ski area is primarily recreational and thus not tax exempt under § 3832(7)). Moreover, while the users of the Ice Center may derive some educational value from hockey and skating, most recreational activities have similar benefits. While ardent hockey fans might disagree, we see no reason, and plaintiff offers none, to conclude that hockey and skating are more educational than other recreational activities, and thus decline to adopt plaintiff's construction of § 3832(7)'s limitations. Therefore, even if the Ice Center cleared the hurdle of § 3802(4), an exemption would still be unavailable under § 3832(7).

¶ 9. The Ice Center also asserts that because the rink would not be taxed if it were owned by the school district or the town, it should not be taxed when owned by a nonprofit corporation. This argument is unavailing. The decision to distinguish between municipally owned facilities and privately owned facilities when granting tax exemptions is a political one made by the Legislature. In this case, the Legislature expressly created this distinction. The statute allows towns to exempt from property tax privately owned recreational facilities through town vote. According to plaintiff, Waterbury has not held such a vote because it wants to avoid having to pay the educational property tax that would result from an exemption.[*] Here, the Legislature's clear intent, evidenced by the plain language of § 3832(7), was to exclude from tax exemption facilities primarily dedicated to recreation. The Ice Center, being primarily recreational, is not exempt from property tax unless and until the required vote occurs. Any change to the existing statutes is, of course, within the sole province of the Legislature.

¶ 10. Finally, plaintiff requests this Court to consider a partial tax exemption. Because 75% of the Ice Center's use is school-related, it urges this Court to grant at least a 75% property tax exemp-

---

[*] Vermont imposes a statewide educational property tax on all nonresidential property, 32 V.S.A. § 5402(a), except property exempt from municipal property tax by law and not by vote. *Id.* § 5401(10)(A). The State notes that if the Ice Center is exempt as a matter of law, then the financial burden of the Ice Center is spread across all Vermont taxpayers, even those who receive little or no benefit from the rink. The Ice Center contends that if Waterbury votes to exempt the Ice Center, then the taxpayers of Waterbury alone are taxed, even though schools in all six towns in Washington West Supervisory Union utilize the rink. If the tax is imposed but the town does not vote to exempt, then, according to the Ice Center, "the rates would be adjusted, and the amount to be paid out in taxes would come primarily from the same school districts that fund the center today." To pay the 2006 tax bill, the Ice Center would have to increase the ice rental fee from $150/hour to $157.50/hour.

tion. This issue was not raised with the superior court, and we do not consider it. *USGen New England, Inc. v. Town of Rockingham*, 2003 VT 102, ¶ 39, 176 Vt. 104, 838 A.2d 927.

*Affirmed*